DGR:BW
F. #2022R00165

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                      Docket No. 22-CR-136 (RPK)

ALEXEY GAVINO,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Benjamin Weintraub
Assistant U.S. Attorney
   (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

I.   The October 20, 2019 Incident ...................................................................... 1

II.  The August 30, 2021 Trip ............................................................................ 2

ARGUMENT ……………………………………………………………………………..4

I.   The Defendant's Disclosure of His Phone's Passcode Was Not Compelled in
     Violation of the Fifth Amendment.................................................................. 5

     A.  Applicable Law.................................................................................. 5

     B.  Discussion......................................................................................... 6

II.  The Defendant's Disclosure of His Phone's Passcode Did Not Violate Miranda …………...7

     A.  Applicable Law.................................................................................. 8

     B.  Discussion………………………………………………………………………..10

     C.  The Defendant's Fruit of the Poisonous Tree Argument Fails…………………………..12

III. The Manual Border Search of the Defendant's Phone Conducted by CBP Did Not
     Violate the Fourth Amendment …..…………………………………………………………..13

     A.  Applicable Law.................................................................................. 13

     B.  A Warrant is Not Required to Conduct a Manual Border Search of
         Electronic Devices ............................................................................. 14

     C.  Reasonable Suspicion is Not Required to Conduct a Manual Border Search of
         Electronic Devices ............................................................................. 15

IV.  Suppression of Evidence from the Forensic Search of the Defendant's Cell Phone
     is Not Warranted ……………………..…………………………………………..…...17

     A.  Applicable Law.................................................................................. 17

     B.  Probable Cause for the Search Warrant Existed Even Absent the Evidence
         Obtained from the Manual Search of the Cell Phone ...................................... 18

V.  Even if the Court Finds that an Illegal Search Occurred, Exclusion of Evidence
    Obtained From the Search Is Not Warranted ……………...………………….…..…..…19

    A.  Applicable Law ............................................................................................................ 20

    B.  The Good Faith Exception Applies.............................................................................. 20

    CONCLUSION......................................................................................................................... 22

## TABLE OF AUTHORITIES

Abidor v. Napolitano, 990 F. Supp. 2d 260 (E.D.N.Y. 2013) ................................................. 15, 16

Alasaad v. Mayorkas, 988 F.3d 8 (1st Cir. 2021) .................................................................... 14, 15

Berkemer v. McCarty, 468 U. S. 420, 437 (1984)…………………………………………………..9

California v. Beheler, 463 U.S. 1121, 1125 (1983) ...................................................................... 9

Hiibel v. Sixth Judicial Dist. Ct. of Nevada, Humboldt Cnty., 542 U.S. 177, 189 (2004)………..5

Illinois v. Gates, 462 U.S. 213 (1983) ....................................................................................... 17

Maryland v. Shatzer, 559 U.S. 98, 113 (2010) ......................................................................... 8, 9

Miranda v. Arizona, 384 U.S. 436 (1966) ................................................................................ 4, 8

Rhode Island v. Innis, 446 U.S. 291 (1980)…………………………………………………….5, 7

Rivera v. United States, 928 F.2d 592 (2d Cir. 1991) .................................................................. 18

Tabbaa v. Chertoff, 509 F.3d 89 (2d Cir. 2007) ........................................................................ 13

Terry v. Ohio, 392 U.S. 1 (1968) .......................................................................................... 8, 16

Texas v. Brown, 460 U.S. 730 (1983) ...................................................................................... 17

United States v. Aigbekaen, 943 F.3d 713 (4th Cir. 2019)........................................................... 21

United States v. Almadaoji, 567 F. Supp. 3d 834, 839-40 (S.D. Ohio 2021)............................... 15

United States v. Asbury, 586 F.2d 973 (2d Cir. 1978) ................................................................ 16

United States v. Bongiovanni, No. 19-CR-227, 2022 WL 17481884
(W.D.N.Y. Aug. 5, 2022)……………………………………………………………………………...14

United States v. Broughton, 600 F. App'x 780, 783 (2d Cir. 2015)………………………………11

United States v. Cano, 934 F.3d 1002 (9th Cir. 2019).......................................................... 14, 15

United States v. Cortez, 449 U.S. 411 (1981)............................................................................ 15

United States v. Cotterman, 709 F.3d 952 (9th Cir. 2013) .......................................................... 16

United States v. Djibo, 151 F. Supp. 3d 297 (E.D.N.Y. 2015)..................................................... 11

United States v. Figueroa, 300 F. App'x 93 (2d Cir. 2008)......................................................... 8

United States v. FNU LNU, 653 F.3d 144 (2d Cir. 2011)..................................................... 8, 9, 10

United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004)................................................................. 18

United States v. Hassan, No. 18-CR-603 (ARR), 2019 WL 5684367
(E.D.N.Y. Nov. 1, 2019)............................................................................................................... 11

United States v. Hearst, No. 18-CR-54, 2022 WL 16832834 (N.D. Ga. Mar. 10, 2022)…………7

United States v. Hernandez, No. 18-CR-1888, 2018 WL 3862017 (S.D. Cal. Aug. 13, 2018) ... 13

United States v. Irving, 452 F.3d 110 (2d Cir. 2006) ............................................................. 14, 16

United States v. Juvenile Male, 968 F. Supp. 2d 490, 509-510 (E.D.N.Y. 2013) ........................ 7

United States v. Kamaldoss, No. 19-CR-543 (ARR), 2022 WL 1200776
(E.D.N.Y. Apr. 22, 2022) ...…………………………………………………………… 11, 12, 14

United States v. Laynes, 481 F. Supp. 3d 657 (S.D. Ohio 2020) ................................................ 19

United States v. Leon, 468 U.S. 897 (1984) ................................................................................ 20

United States v. Levy, 803 F.3d 120 (2d Cir. 2015) ............................................................... 13, 14

United States v. Mast, 735 F. 2d 745, 749 (2d Cir. 1984) ............................................................ 5

United States v. Molina-Isidoro, 884 F.3d 287 (5th Cir. 2018)............................................. 14, 21

United States v. Montoya de Hernandez, 473 U.S. 531 (1985)............................................. 14, 16

United States v. Morales, 788 F.2d 883 (2d Cir. 1986) .............................................................. 13

United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) ................................................... 9, 11

United States v. Nieves, 609 F.2d 642 (2d Cir. 1979) ................................................................. 14

United States v. Patane, 542 U.S. 630 (2004).............................................................................. 12

United States v. Ramsey, 431 U.S. 606 (1977) ........................................................................... 14

United States v. Raymonda, 780 F.3d 105 (2d Cir. 2015)........................................................... 21

United States v. Reilly, 76 F.3d 1271 (2d Cir.1996) ................................................................... 18

iv

_United States v. Rodriguez_, No. 18-CR-444 (NGG), 2019 WL 112621
(E.D.N.Y. Jan. 4, 2019)……………………………………………………………………..7

_United States v. Ruiz_, 785 F.3d 1134 (7th Cir. 2015) ................................................ 16

_United States v. Salameh_, 152 F.3d 88 (2d Cir. 1998) .............................................. 18

_United States v. Schaffer_, 851 F.3d 166, 175–76 (2d Cir. 2017)…………………………………8

_United States v. Singh_, 390 F.3d 168 (2d Cir. 2004)................................................... 18

_United States v. Tavares_, No. 11-CR-610 (NGG), 2012 WL 194974
(E.D.N.Y. Jan. 23, 2012) ............................................................................................ 11

_United States v. Thomas_, 757 F.2d 1359 (2d Cir.1985) ............................................ 22

_United States v. Touset_, 890 F.3d 1227 (11th Cir. 2018) ........................................... 15

_United States v. Vergara_, 884 F.3d 1309, 1312 (11th Cir. 2018)  ………………………………14

_United States v. Wanjiku_, 919 F.3d 472 (7th Cir. 2019) ........................................... 14

_United States v. Washington_, 431 U.S. 181, 188 (1977)........................................ 5, 6

_United States v. Wilson_, 100 F. Supp. 3d 268, 283-84 (E.D.N.Y. 2015)................................. 7, 11

_United States v. Yilmaz_, 508 F. App'x 49 (2d Cir. 2013) ........................................... 10

_United States v. Zimmerman_, 480 F. Supp. 3d 446, 455 (E.D.N.Y. 2020)………………………6

_Walczyk v. Rio_, 496 F.3d 139 (2d Cir. 2007).............................................................. 18

PRELIMINARY STATEMENT

The defendant moves to suppress evidence obtained pursuant to manual and forensic searches of his cell phone, which was obtained from the defendant during a Customs and Border Protection ("CBP") examination at John F. Kennedy International Airport ("JFK") on August 30, 2021.  See ECF No. 22 (Dec. 1, 2022) ("Def. Mem.").  The defendant argues that evidence obtained from his cell phone was searched and seized in violation of the Fourth and Fifth Amendments.  The defendant's arguments are without merit, and, for the reasons set forth below, the Court should deny the defendant's motion in its entirety.

STATEMENT OF FACTS

On August 30, 2021,[1] the defendant traveled from the Dominican Republic to JFK.  (Def. Mem. Ex. B at ¶ 3.)  Like all international travelers, the defendant would be required to clear customs before being formally admitted into the United States.  At the time of his August 2021 trip, there was a CBP alert in place that advised any CBP officer at JFK to conduct a secondary border enforcement inspection of the defendant before admitting him into the United States.  This alert was tied to an October 20, 2019 incident involving the defendant at the Dallas/Fort Worth International Airport ("DFW").

I.      THE OCTOBER 20, 2019 INCIDENT

During his October 20, 2019 trip, the defendant was traveling from DFW to Los Angeles, California, and was stopped by HSI officers conducting passenger interdiction as part

---

[1]      These facts are drawn from the search warrant affidavit and the defendant's affidavit attached, respectively, as Exhibit A and Exhibit B to the defendant's motion, documents produced to the defendant as discovery in this case and facts that the government proffers in connection with the instant motion and would establish at an evidentiary hearing.

of a bulk cash smuggling initiative.  The officers spoke with the defendant and observed that he was sweating profusely and wearing a winter coat and hooded sweatshirt, despite the relatively warm temperature inside the airport.  When asked about his purpose for traveling to California, the defendant told officers he was going to watch a friend's dogs for a few days.  During this exchange, officers observed a bulge in the front pocket of the defendant's sweatshirt.  They asked the defendant for consent to search his clothing, and the defendant consented.  During the search, the officers smelled marijuana on the defendant's clothing and found approximately $10,000 in cash inside the defendant's sweatshirt.

After officers discovered the money, the defendant claimed that someone gave him the money to purchase a dog in California.  Asked whether he had any additional money or other contraband in his checked luggage, the defendant stated he believed there was only clothing in his luggage.  During a consensual search of the luggage, the officers again smelled a strong odor of marijuana and found cash hidden throughout the luggage—in clothing pockets, pants legs, sandals and undergarments.  In total, officers recovered $37,100 from the defendant's person and luggage.  The defendant told officers that the money did not belong to him, but he declined to provide a name for the purported owner.

## II.    THE AUGUST 30, 2021 TRIP

On August 30, 2021, the defendant arrived at JFK on an international flight from the Dominican Republic.  At the primary border inspection area, a CBP officer informed the defendant that he needed to complete a secondary inspection.  (Id. Ex. A at ¶ 8.)  While accompanied by plainclothes CBP officers, the defendant retrieved his luggage and was brought to the CBP secondary inspection area.  As with all secondary inspections, the defendant's luggage was searched by removing its contents.  As that search was occurring, CBP Officer Joseph Sottile ("CBPO Sottile") began asking the defendant questions about the October 2019

2

incident described above.  CBPO Sottile had reviewed the alert and was familiar with the October 2019 incident.  At various points throughout the conversation, the defendant either refused to provide answers responsive to CBPO Sottile's questions, claimed not to remember information responsive to his questions or provided inconsistent answers.

In response to the defendant's unwillingness to provide certain information relating to the 2019 incident, including information relating to the intended recipient of the seized cash, CBPO Sottile asked for the defendant's cell phone in an effort to dispel concerns about the defendant's potential involvement in drug trafficking.  The defendant then provided his cell phone to CBPO Sottile.  When the defendant initially provided the cell phone to CBPO Sottile, the phone was on, but locked.  CBPO Sottile asked the defendant to unlock the phone.  In response, the defendant asked CBPO Sottile why CBPO Sottile could not unlock the phone himself, since CBPO Sottile worked for the government.  CBPO Sottile told the defendant that CBP did have the technical capability to unlock his phone, but that that procedure would need to be done in a separate facility and that it might take a long time.  CBPO Sottile told the defendant that it would be easier and faster for the defendant to unlock the phone.  Thereafter, the defendant tapped the phone's screen and then handed the phone to CBPO Sottile, now unlocked.  CBPO Sottile asked the defendant for the phone's passcode and the defendant provided it orally.

CBPO Sottile began conducting a manual search of the defendant's phone and, shortly thereafter, discovered photos and videos of child pornography.  While CBPO Sottile was conducting the manual search of the defendant's phone, the defendant stated that he knew he had child pornography on his phone and that he knew that it was illegal.  At approximately 3:39 p.m.—approximately 30 minutes from the start of the defendant's secondary inspection—CBPO Sottile contacted Homeland Security Investigations ("HSI") Special Agent Shannon Christie

("SA Christie") and alerted her that he had found child pornography on the defendant's phone. (Def. Mem. Ex. A at ¶ 10.)

At approximately 4:00 p.m., SA Christie arrived at the secondary inspection area and conducted a manual search of the defendant's phone, during which she discovered seven videos of child pornography, a video showing a large amount of what appeared to be marijuana and several photos showing large stacks of cash. (Def. Mem. Ex. A at ¶ 10.) At approximately 4:35 p.m., SA Christie advised the defendant of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) and its progeny and the defendant waived those rights both orally and in writing. (Def. Mem. Ex. A. at ¶ 11.) SA Christie then conducted a voluntary interview of the defendant, as CBPO Sottile continued his manual inspection of the defendant's cell phone. (Def. Mem. Ex. A at ¶ 11.) During the interview with SA Christie, the defendant admitted that he had received child pornography on his cell phone and saved approximately 20 videos and images of child pornography on his cell phone. (Id.) The defendant described the videos as portraying children engaging in sexual intercourse and performing oral sex. The defendant admitted that he used his cell phone to participate in a group chat on the Telegram application in which he discussed child pornography with other group members. (Def. Mem. Ex. A at ¶ 11.) He also admitted that he had purchased child pornography and that records relating to the purchase could be found on his phone. (Id.) CBPO Sottile completed his manual inspection of the defendant's cell phone at 7:00 p.m. that day. On August 31, 2021, the Honorable Marcia M. Henry, signed a search warrant authorizing HSI to forensically examine the contents of the defendant's cell phone (21-MJ-1014).

<u>ARGUMENT</u>

The defendant moves to suppress the child pornography and other evidence seized from his cellular telephone, asserting that it was obtained in violation of the Fourth and Fifth

4

Amendments.  Specifically, the defendant asserts that (i) he was required to disclose his passcode, which was a compelled, testimonial and incriminating statement, in violation of the Fifth Amendment, (ii) he disclosed the phone's passcode without first being advised of his Miranda rights, and (iii) the manual search of the defendant's phone was conducted without a search warrant, probable cause or reasonable suspicion, in violation of the Fourth Amendment. (Def. Mem. at 6-15.)  As discussed below, each of these arguments fail.  First, the defendant's voluntary disclosure of the cell phone's passcode does not implicate the Fifth Amendment. Second, because the defendant was not in custody at the time he disclosed the phone's passcode, Miranda does not apply.  Third, and finally, in light of the well-settled border search exception to the Fourth Amendment,  law enforcement officers were permitted to conduct a manual search of the defendant's phone without a search warrant, probable cause or reasonable suspicion. Nevertheless, the officers had ample suspicion supporting the review of his device.

I.      The Defendant's Disclosure of His Phone's Passcode Was Not Compelled in Violation of the Fifth Amendment

A.      Applicable Law

The Fifth Amendment states that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. AM. V.  "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial Dist. Ct. of Nevada, Humboldt Cnty., 542 U.S. 177, 189 (2004).  A statement is "compelled" only when, "considering the totality of the circumstances, the free will of the [person making the statement] was overborne."  United States v. Washington, 431 U.S. 181, 188 (1977).  "Factors to be considered in making a determination of voluntariness include, but are not limited to, the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation."  United States v. Mast, 735 F. 2d

745, 749 (2d Cir. 1984).  "In evaluating whether [a statement] is voluntary, courts must be mindful of a distinction between 'choices which are physically or psychologically coerced and those which are merely difficult.  Only the former are void under our law.'"  United States v. Zimmerman, 480 F. Supp. 3d 446, 455 (E.D.N.Y. 2020) (quoting United States v. Mullens, 536 F.2d 997, 1000 (2d Cir. 1976)).

B.   Discussion

Contrary to the defendant's conclusory assertion that "law enforcement agents compelled Mr. Gavino to provide them with his numeric key," (Def. Mem. at 6), the facts make clear that the defendant acted voluntarily in providing the passcode to his phone.  Indeed, an evidentiary hearing on this point is not required, because even accepting the defendant's account as accurate—which it is not—he acted voluntary.  The defendant claims that "the officers took [his] iPhone from [his] person," and that after he "asked what would happen if [he] did not give [his] passcode," law enforcement officers told him that "they would not give [his] phone back," (Def. Mem. Ex. B at ¶¶ 8, 11).  According to the defendant, it was only then that he provided his passcode.

On the defendant's own self-serving version of events, these facts are insufficient to conclude that his "free will . . . was overborne."  Washington, 431 U.S. at 188.  At the point CBP held his phone and asked for the passcode, the defendant was simply faced with a difficult decision: decline to provide the passcode and lose his phone for an indefinite period of time; or provide the passcode and get it back.  He freely chose to give them the passcode.  The defendant does not claim that he was threatened, tricked, or mentally incapacitated at the time (because he was not).

Courts within the Second Circuit have routinely rejected voluntariness arguments made under similar, or even more serious, circumstances.  See, e.g., Zimmerman, 480 F. Supp.

6

3d at 458-59 (despite defendant being in custody for nearly 10 hours before interview, statements made during interview were voluntary); United States v. Wilson, 100 F. Supp. 3d 268, 283-84 (E.D.N.Y. 2015) (even where defendant was handcuffed at time statements made, statements were voluntarily made where the defendant "was not faced with violence or threats of violence," "was not promised anything in exchange" for the statements, "was not tricked or otherwise coerced into making the statements" and no evidence existed that the defendant's "mental capacity was diminished"); United States v. Juvenile Male, 968 F. Supp. 2d 490, 509-510 (E.D.N.Y. 2013) (statements voluntarily made where "no threatening statements were made and no physical force was exerted" and "none of the detectives who interviewed the defendant engaged in 'repeated and prolonged questioning'") (internal alterations omitted); United States v. Rodriguez, No. 18-CR-444 (NGG), 2019 WL 112621, at *7-8 (E.D.N.Y. Jan. 4, 2019) (despite officer's "false" and "arguably misleading" statements to the defendant, defendant's statements made in interview room at JFK were voluntary, in part because "'there is . . . a line separating tolerable deception from unconstitutional coercion'" (quoting United States v. Shehadeh, 940 F. Supp. 2d 66, 74 (E.D.N.Y. 2012))); see also United States v. Hearst, No. 18-CR-54, 2022 WL 16832834, at *21-22 (N.D. Ga. Mar. 10, 2022) (arrested defendant's pre-Miranda disclosure of cell phone passcode while handcuffed voluntary).

For these reasons, the defendant's Fifth Amendment "compulsion" argument can be rejected.

## II.   THE DEFENDANT'S DISCLOSURE OF HIS PHONE'S PASSCODE DID NOT VIOLATE MIRANDA

The defendant also seeks to suppress the child pornography and other evidence obtained from his cellular telephone by arguing that law enforcement obtained that evidence only after obtaining his passcode during an un-Mirandized interrogation.  Setting aside that law

enforcement subsequently obtained a search warrant for the device, the defendant's argument fails because he was not in custody at the time he unlocked his phone and disclosed its passcode—or at any other time on August 30, 2021—and therefore, Miranda did not apply.

    A.    Applicable Law

        Generally, a person must be advised of certain rights before being subject to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444 (1966). For Miranda warnings to be required, a court must find both that (1) there was an "interrogation" of the defendant, and (2) the interrogation was while the defendant was in "custody." United States v. FNU LNU, 653 F.3d 144, 148 (2d Cir. 2011).

        "Interrogation" includes express questioning of the suspect and its "functional equivalent . . . words or actions on the part of law enforcement officers that the officers should know are reasonably likely to elicit an incriminating response for the suspect." Rhode Island v. Innis, 446 U.S. 291, 292 (1980). Statements made by law enforcement as they fulfill their employment responsibilities do not qualify as interrogation. United States v. Figueroa, 300 F. App'x 93, 95 (2d Cir. 2008) (statements made "while the officers were going about their routine tasks in conducting a search, securing a crime scene, and making an arrest" were not "reasonably likely to elicit an incriminating response").

        The meaning of "custody" under Miranda is narrower than the meaning of a "seizure" under the Fourth Amendment, and "not every seizure constitutes custody for purposes of Miranda." United States v. Schaffer, 851 F.3d 166, 175–76 (2d Cir. 2017) (defendant was not in custody even though he was denied permission to leave). Indeed, individuals are not free to leave during routine traffic stops, nor in investigative Terry stops, see Terry v. Ohio, 392 U.S. 1 (1968), and those forms of detention are therefore seizures under the Fourth Amendment; yet they do not generally constitute Miranda custody. Maryland v. Shatzer, 559 U.S. 98, 113 (2010)

8

("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop . . . does not constitute Miranda custody.").  The Supreme Court has "[made] clear that the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody," which is not accorded "'talismanic power,' because Miranda is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.'" Shatzer, 559 U.S. at 113 (quoting Berkemer v. McCarty, 468 U. S. 420, 437 (1984)).

Further, "custody for Miranda purposes is not coterminous with . . . the colloquial understanding of custody."  FNU LNU, 653 F.3d at 144.  In determining whether a defendant is in Miranda custody, "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  California v. Beheler, 463 U.S. 1121, 1125 (1983); see also Howes v. Fields, 565 U.S. 499, 509 (2012) (issue is "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda.").  The Second Circuit, interpreting the Supreme Court in Berkemer, has indicated that two "particularly relevant" factors in determining whether an investigative seizure "involves restraints generally associated with a formal arrest" are "whether a reasonable person in the suspect's shoes would have understood that his detention was not likely to be 'temporary and brief,'" and "whether a person stopped under the circumstances at issue would feel that he was 'completely at the mercy of the police.'"  United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) (quoting Berkemer, 486 U.S. at 437-438). The test is objective, based upon the perspective of a reasonable person in the suspect's position. See Berkemer, 468 U.S. at 442.

When arriving at a U.S. airport, "compulsory questioning—with no freedom to enter the United States and with nowhere else to go—inheres in the situation" and the traveler

"has voluntarily submitted to some degree of confinement and restraint by approaching the border." FNU LNU, 653 F.3d at 153–54.  As a result, "a reasonable traveler will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on." Id.  This expectation of constraints and questions, and the fact that "at least initially, every traveler in the airport must submit to the same sort of questioning while not free to leave[,] reduces the likelihood that reasonable persons in that situation would consider themselves to be under arrest." Id. at 154.

B.    Discussion

Based on the totality of facts set out above and those to be offered at an evidentiary hearing on this motion, the defendant was not in Miranda "custody" at the time he provided his passcode to CBP or at any other time during his secondary border enforcement examination.  As described in detail above, the defendant was referred to a secondary border enforcement examination, a routine step taken every day at an international airport.  He was there for 30 minutes while his luggage was examined and he was asked questions related to his travel and the 2019 incident at another international airport.  The defendant does not allege that he was handcuffed, told he was under arrest, threatened or promised anything by HSI officers. None of this amounts to restraints of freedom akin to a formal arrest and, and such, Miranda was not applicable at that stage.

The Second Circuit has examined similar and even more onerous circumstances at the border and found that they amount to nothing more than a routine, non-custodial border search.  See, e.g., FNU LNU, 653 F.3d at 155 (finding non-custodial a 90-minute airport interrogation in which defendant was finger-printed and confronted with apparent false statements in an old passport application); United States v. Yilmaz, 508 F. App'x 49, 52 (2d Cir. 2013) (affirming as non-custodial a 90-minute inspection at vehicular border crossing); United

States v. Broughton, 600 F. App'x 780, 783 (2d Cir. 2015) (affirming that defendant was not in custody after being escorted by law enforcement to a private part of the airport to field test a white powdery substance found on the defendant's belongings); Wilson, 100 F. Supp. 3d at 278-79 (questioning in private room and physical pat-down were not custodial); United States v. Kamaldoss, No. 19-CR-543 (ARR), 2022 WL 1200776, at *7-8 (E.D.N.Y. Apr. 22, 2022) (questioning for 30-40 minutes in secondary inspection room with other people before being moved to another room with a closed door); United States v. Hassan, No. 18-CR-603 (ARR), 2019 WL 5684367, at *3 (E.D.N.Y. Nov. 1, 2019) (finding defendant's allegations that CBP officers took him "to a separate room, questioned him about his travels, searched his luggage, copied his paperwork, took his cell phone, and would not allow him to be alone" amounted to nothing more than a "modern border inspection"); United States v. Tavares, No. 11-CR-610 (NGG), 2012 WL 194974, at *2 (E.D.N.Y. Jan. 23, 2012) (defendant confronted by uniformed government agent and not free to leave CBP interrogation was not in custody and subject only to a "modern border inspection"); cf. Newton, 369 F.3d at 676 ("Handcuffs are generally recognized as a hallmark of a formal arrest.").

"In the rare cases where a court has suppressed a defendant's statements to CBP, it was because CBP's conduct went beyond a typical border inspection that an international traveler would expect." Hassan, 2019 WL 5684367, at *3.  No such aggravating factors are present here.  The defendant's reliance on United States v. Djibo, 151 F. Supp. 3d 297 (E.D.N.Y. 2015), is misplaced.  Djibo is a singular case, in which the district court suppressed evidence obtained from an outbound passenger's cell phone after it was seized at the airport and he disclosed its passcode.  The fact that the defendant in Djibo was an outbound passenger leaving the country rather than an inbound passenger entering the country was central to the court's

decision.  See Kamaldoss, 2022 WL 1200776, at *8 n.8 (Under similar circumstances as those

present here, defendant's "heavy reliance" on Djibo was "misplaced" because "[w]hile the court

in that case concluded that the defendant was in custody, the fact that the defendant was

an *outbound*—not inbound—traveler at the time he was stopped by border agents was integral to

the court's determination") (emphasis in the original)  In addition, in Djibo, the court explained

that, in its view, law enforcement "sought to sidestep . . . constitutional guarantees," and, instead,

the defendant in that case should have been arrested outside the airport prior to his arrival, but for

law enforcement's strategic decision to subject him to a search and coercive interrogation when

he reached the border.  Id. at 306, 309-10.   Neither Djibo's facts nor its reasoning apply the

present case.

   For all of those reasons, the defendant's arguments that his disclosure of his

phone's passcode violated Miranda should be rejected.

   C.  The Defendant's Fruit of the Poisonous Tree Argument Fails

   The defendant argues that the evidence obtained from his cell phone should be

suppressed as fruit of the poisonous tree because the passcode was obtained in violation of his

Fifth Amendment rights.  (Def. Mem. at 8-9.)  As discussed above, the defendant cannot

establish a Fifth Amendment violation.  But even assuming he could, the evidence of child

pornography recovered from the defendant's cell phone should not be suppressed.

   The Fifth Amendment "cannot be violated by the introduction of nontestimonial

evidence obtained as a result of voluntary statements."  United States v. Patane, 542 U.S. 630,

631 (2004).  The Fifth Amendment proscribes "extract[ing] from the person's own lips an

admission of guilt, which would thus take the place of other evidence."  Id. at 637 (emphasis in

the original); see also id. at 639, 642 (holding that "[t]here is . . . no reason to apply the 'fruit of

the poisonous tree' doctrine" to evidence obtained derivatively from statements elicited without

Miranda warnings because the rationale of deterring unlawful searches does not apply to failures to give Miranda warnings). "The Miranda presumption of coercion . . . has not barred the use of unwarned, voluntary statements . . . to locate non-testimonial evidence[.]" United States v. Morales, 788 F.2d 883, 886 (2d Cir. 1986); see also United States v. Hernandez, No. 18-CR-1888, 2018 WL 3862017, at *4 (S.D. Cal. Aug. 13, 2018) (denying motion to suppress evidence from cell phone where passcode was obtained after defendant invoked her right to counsel after her arrest at the border for narcotics offenses because there was no evidence of coercion or a denial of due process in elicitation of the statements). Thus, even if the defendant's disclosure of his cell phone's passcode is suppressed, the evidence obtained from his cell phone based upon a valid border search and subsequent search warrant should not be.

III.    The Manual Border Search of the Defendant's Phone Conducted by CBP Did Not Violate the Fourth Amendment

Relying on Riley v. California, 573 U.S. 373 (2014), the defendant argues that CBP's manual search of his cell phone during the secondary inspection required a warrant or, at least, be supported by reasonable suspicion or probable cause. (Def. Mem. at 9-15.) This argument fails, as courts throughout the country have rejected arguments to apply Riley to warrantless border searches.

A.    Applicable Law

The Second Circuit has "recognize[d] the Federal Government's broad plenary powers to conduct so-called 'routine' searches at the border even without 'reasonable suspicion that the prospective entrant has committed a crime.'" United States v. Levy, 803 F.3d 120, 122 (2d Cir. 2015) (quoting Tabbaa v. Chertoff, 509 F.3d 89, 97–98 (2d Cir. 2007)). "[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior" due to the government's broad and comprehensive "power to protect the Nation

13

by stopping and examining persons entering this country." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985); see also United States v. Ramsey, 431 U.S. 606, 616 (1977) ("searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border"); United States v. Nieves, 609 F.2d 642, 645 (2d Cir. 1979) (same). Moreover, it is "well established that the Customs area of an international airport is the functional equivalent of a border for purposes of the border search doctrine." Levy, 803 F.3d at 122 (citing United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006)).

>B. A Warrant is Not Required to Conduct a Manual Border Search of Electronic Devices

Though neither the Supreme Court nor the Second Circuit has squarely addressed the issue of border searches of electronic devices, see Kamaldoss, 2022 WL 1200776, at *10, "no court has ever required a warrant for any border search or seizure," United States v. Wanjiku, 919 F.3d 472, 485 (7th Cir. 2019), either pre- or post-Riley. "Riley does not command a warrant requirement for border searches of electronic devices nor does the logic behind Riley compel . . . one." Alasaad v. Mayorkas, 988 F.3d 8, 17, 18-19 (1st Cir. 2021); see also United States v. Cano, 934 F.3d 1002, 1015-1016 (9th Cir. 2019) (rejecting application of Riley and warrant requirement to manual searches of cell phones at the border); United States v. Molina-Isidoro, 884 F.3d 287, 292 (5th Cir. 2018) ("[N]ot a single court addressing border searches of computers since Riley has read it to require a warrant.") (collecting cases); United States v. Vergara, 884 F.3d 1309, 1312 (11th Cir. 2018) ("Border searches never require probable cause or a warrant"); United States v. Bongiovanni, No. 19-CR-227, 2022 WL 17481884, at *12 (W.D.N.Y. Aug. 5, 2022) (neither search warrant nor probable cause required even for nonroutine border search of cell phone).

C.    Reasonable Suspicion is Not Required to Conduct a Manual Border Search of Electronic Devices

No court has held, even post-Riley, that reasonable suspicion is required to conduct a manual search of a cell phone at the border.  Indeed, numerous courts have explicitly held, post-Riley, that law enforcement officers may conduct manual searches of cell phones absent any reasonable suspicion.  See, e.g., Alasaad, 988 F.3d at 18-19 ("basic border searches," including those that "require an officer to manually traverse the contents of the traveler's electronic device . . . need not be supported by reasonable suspicion"), Cano, 934 F.3d at 1007 ("manual cell phone searches may be conducted by border officials without reasonable suspicion") (emphasis in the original), United States v. Touset, 890 F.3d 1227, 1229 (11th Cir. 2018) ("our precedents about border searches of property make clear that no suspicion is necessary to search electronic devices at the border"), United States v. Almadaoji, 567 F. Supp. 3d 834, 839-40 (S.D. Ohio 2021) ("A manual search, whereby an officer simply scrolls through the device to view its contents, is classified as [a] 'routine' border search for which no warrant, reasonable suspicion or probable cause is required."); see also Abidor v. Napolitano, 990 F. Supp. 2d 260, 277 (E.D.N.Y. 2013) (holding, pre-Riley, that "reasonable suspicion is not required to conduct a cursory manual search of an electronic device at the border").  Indeed, the defendant has not cited any case in which a court has required that manual searches of cell phones at the border be supported by reasonable suspicion.

Even assuming, arguendo, that CBPO Sottile needed reasonable suspicion to conduct the manual search of the defendant's cell phone, the facts proffered above, and to offered at a hearing, make clear that he had such reasonable suspicion.  The Supreme Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 417–18 (1981).  The

15

standard is met when law enforcement can point to "specific and articulable facts" that lead to the inference that criminal activity "may be afoot." Terry, 392 U.S. at 30.  "Reasonable suspicion is a relatively low standard and border officials are afforded deference due to their training and experience." Abidor, 990 F. Supp. 2d at 282 (citing United States v. Montoya de Hernandez, 473 U.S. 531, 542 (1985)).  An analysis of whether reasonable suspicion exists also considers an officer's background and training, United States v. Cotterman, 709 F.3d 952, 967 (9th Cir. 2013), and the context of the situation as a whole, United States v. Ruiz, 785 F.3d 1134, 1141 (7th Cir. 2015).  In the border search context, the Second Circuit has provided a number of factors that can support a finding of reasonable suspicion, including nervous or unusual conduct, tips from informants, travel itinerary, discovery of incriminating matter during routine searches, inadequate luggage and evasive or contradictory answers.  United States v. Asbury, 586 F.2d 973, 976 (2d Cir. 1978); Irving, 452 F.3d at 124 (applying Asbury factors to border search of diskettes).

Here, CBPO Sottile had reasonable suspicion based on the defendant's prior interaction with law enforcement at DFW in 2019—which included the defendant providing evasive, inconsistent and untruthful answers to law enforcement's questions, the defendant smelling of marijuana and the discovery of over $37,000 in cash hidden throughout the defendant's luggage—as well as based on the defendant's conduct during the secondary inspection before CBPO Sottile inspected the defendant's phone.  As described above, before CBPO Sottile asked the defendant to turn over his phone, CBPO Sottile had asked the defendant questions about his 2019 trip.  It was only after CBPO Sottile determined that the defendant was again providing evasive, implausible and inconsistent answers that he asked the defendant to turn

over his phone.  Accordingly, even if the Court were to require reasonable suspicion for the manual search of the defendant's cell phone, it existed here and suppression is not warranted.

IV.     Suppression of Evidence from the Forensic Search of the Defendant's Cell Phone is Not Warranted

On August 31, 2021, United States Magistrate Judge Marcia M. Henry signed a search warrant for the defendant's cell phone.  See Def. Mem. Ex. A.  The warrant was supported by probable cause articulated in an affidavit.  The defendant discusses the search warrant only in the cursory sense that photos found in the manual search of the defendant's cell phone were relied on in the government's probable cause showing.  (Def. Mem. at 15-16.)  But the defendant's discussion—or lack thereof—of the warrant and its affidavit seeks to isolate single facts from the affidavit, ignoring the key principle that probable cause is evaluated based on the totality of the circumstances and requires only the probability that evidence of a crime will be found in the place to be searched.

A.     Applicable Law

In considering a request for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[P]robable cause is a flexible, common-sense standard, Texas v. Brown, 460 U.S. 730, 742 (1983), and the Fourth Amendment requires "[o]nly the probability, and not a prima facie showing, of criminal activity" to meet it, Gates, 462 U.S. at 235 (internal quotation marks omitted).  In assessing the sufficiency of a warrant application, the training and experience of law enforcement agents bear significantly on probable cause determinations.  Id. at 232.  Inferences drawn by law enforcement agents based on facts known to them, the totality of the circumstances and their

17

training and experience may all support a probable cause finding.  Id. at 231–32; see also United

States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004) ("[C]ourts recognize that experience and

training may allow a law enforcement officer to discern probable cause from facts and

circumstances where a layman might not.").  Moreover, a showing of nexus between the alleged

criminal activities and the place to be searched "does not require direct evidence and may be

based on reasonable inference from the facts presented based on common sense and experience."

United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004).

        In determining whether probable cause for a warrant exists, a court must "resolve

any doubt about the existence of probable cause in favor of upholding the warrant," United

States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998), and must accord "considerable deference to

the probable cause determination of the issuing magistrate," Walczyk v. Rio, 496 F.3d 139, 157

(2d Cir. 2007).  Under this deferential standard, an individual "who argues that a warrant was

issued on less than probable cause faces a heavy burden."  Rivera v. United States, 928 F.2d 592,

602 (2d Cir. 1991).  While evidence seized during an illegal search should not be included in a

warrant affidavit, the "mere inclusion of tainted evidence in an affidavit does not, by itself, taint

the warrant or the evidence seized pursuant to the warrant."  United States v. Reilly, 76 F.3d

1271, 1282 n.2 (2d Cir.1996).  Rather, a "reviewing court should excise the tainted evidence and

determine whether the remaining, untainted evidence would provide a neutral magistrate with

probable cause to issue a warrant."  Id.

        B.      Probable Cause for the Search Warrant Existed Even Absent the Evidence
                Obtained from the Manual Search of the Cell Phone

        Even if the Court finds that the manual search of the defendant's cell phone was

illegal—which it was not—the evidence from the manual search was only one factor that Judge

Henry considered in finding probable cause to issue the warrant.  Most notably, in addition to the

child pornography discovered during the manual search, the affidavit presented evidence that the

defendant, in a Mirandized interview with SA Christie, admitted (i) that he had approximately 20

videos and images of child pornography saved on his cell phone, (ii) that he used the cell phone

to participate in conversations discussing child pornography and (iii) that the cell phone

contained records reflecting his purchase of child pornography.  Given these admissions, which

the defendant does not challenge in his motion to suppress, even if this Court excised the

photographs from the manual search from search warrant affidavit, the affidavit still presented

probable cause that evidence of the defendant's possession of child pornography would be found

on his cell phone.  Accordingly, the search warrant should not be suppressed.[2]

V.     Even if the Court Finds that an Illegal Search Occurred, Exclusion of Evidence Obtained
       From the Search Is Not Warranted

Even were the Court to find that evidence from the manual border search of the

defendant's cell phone was illegally obtained, and that the resulting search warrant affidavit

excising that evidence lacked probable cause to support its issuance, exclusion is not warranted

---

[2] United States v. Laynes, 481 F. Supp. 3d 657 (S.D. Ohio 2020) is inapposite.  In that
case, the court held that neither a search warrant nor reasonable suspicion is needed for law
enforcement to conduct a manual search of electronics at the border.  See id. at 663-65.
Nevertheless, the court suppressed evidence of child pornography discovered during the manual
search of the defendant's cell phone because the CBP officer who conducted the searched
violated internal CBP procedures by failing to place the phone in "airplane mode" before
beginning the search.  Id. at 665-69.  In that case, all of the evidence of child pornography found
on the defendant's phone—i.e., all of the evidence that the court suppressed—was found during
the manual search.  Unlike here, there was no subsequent interview with the defendant where he
confessed to possessing child pornography, nor was a search warrant authorizing a forensic
search of the phone obtained, which subsequent forensic search uncovered additional evidence of
child pornography.  Because the Laynes court was not tasked with deciding whether evidence
obtained from a forensic search pursuant to a search warrant obtained after an arguably illegal
manual search of a phone should be suppressed, it is inapposite.

becaus  the government relied in good faith on the issued warrant.  See United States v. Leon, 468 U.S. 897, 922 (1984).

    A.    <u>Applicable Law</u>

        In <u>Leon</u>, the Supreme Court held that the exclusionary rule "does not apply to evidence seized 'in objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently deemed invalid."  <u>United States v. Falso</u>, 544 F.3d 110, 125 (2d Cir. 2008) (quoting <u>Leon</u>, 468 U.S. at 922).  The <u>Leon</u> Court explained that, "assuming that the [exclusionary] rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement."  <u>Leon</u>, 468 U.S. at 919.

        Under the good faith exception, evidence collected pursuant to an invalid search warrant will be suppressed only if the issuing judge was knowingly misled, the issuing judge wholly abandoned her judicial role, the application was so lacking in indicia of probable cause as to render reliance upon it unreasonable or the warrant is so facially deficient that reliance upon it is unreasonable.  <u>Falso</u>, 544 F.3d at 125.  If the officer's reliance on the warrant was objectively reasonable, suppression is not warranted.  <u>Leon</u>, 468 U.S. at 922.  To trigger the exclusionary rule, law enforcement conduct "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  <u>United States v. Herring</u>, 555 U.S. 135, 144 (2009).

    B.    <u>The Good Faith Exception Applies</u>

        Here, law enforcement agents had every reason to believe that the routine search of the defendant's cell phone was lawful, and their reliance on the resulting search warrant was more than reasonable.  At the time of the search, no court had ever required any level of

suspicion for the manual search of a cell phone at the border, no court had ever held that a border search of a passenger's cell phone was per se invalid if the phone was not in airplane mode and no court in this Circuit had ever suppressed evidence from the border search of a phone that was not in airplane mode.  See United States v. Raymonda, 780 F.3d 105, 119 (2d Cir. 2015) ("a prior holding by a district court cannot establish a binding principle of law sufficient to undermine an agent's good faith reliance on a later warrant").  Indeed, the search warrant affidavit asserted that the government may already have the necessary authority to forensically review the phone, but was seeking the warrant "to ensure that a search of the [phone] would comply with the Fourth Amendment and other applicable law."  (Def. Mem. Ex. A at ¶ 21.)

Law enforcement agents further had no basis to believe that the search warrant issued by Judge Henry was invalid, as none of the Leon factors supporting suppression are present here.  See United States v. Aigbekaen, 943 F.3d 713, 725 (4th Cir. 2019) (applying the good faith exception in the context of warrantless forensic searches of electronic devices given the permissive "uniform body of precedent" that existed at the time of the search); Molina-Isidoro, 884 F.3d at 291-92 (reasonable for law enforcement to think that warrantless, manual search of defendant's cell phone at the border was lawful).  Where law enforcement acted in good faith reliance on existing law, no meaningful deterrent effect would be achieved through suppression of evidence.

Finally, to the extent that the Court finds that the photos from the manual search were illegally obtained, the good faith exception would still prevent suppression, as it is applicable even where a search warrant affidavit contains illegally obtained evidence.  See United States v. Ganias, 824 F.3d 199, 225 (2d Cir. 2016) (en banc) (applying the good-faith doctrine to the subsequent warrant-authorized search, even though the affidavit contained

21

evidence obtained in violation of the Fourth Amendment, because the officer was acting in good faith and had no reason to believe that his actions were unlawful); United States v. Thomas, 757 F.2d 1359, 1368 (2d Cir.1985) (same).

Accordingly, even if the Court determines that the affidavit lacked probable cause, the good faith exception applies and suppression is not warranted.

<u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the defendant's motion in its entirety.

Dated:      Brooklyn, New York
            December 19, 2022

                                            Respectfully submitted,


                                            BREON PEACE
                                            UNITED STATES ATTORNEY
                                            Eastern District of New York


                        By:     /s/ Benjamin Weintraub
                                Benjamin Weintraub
                                Assistant United States Attorney
                                (718) 254-6519

22